IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| ROBERT SHENTON,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | Civil Action No. 3:17cv404 (MHL) |
| | ) | |
| AEROJET ROCKETDYNE, INC.,<br>    Defendant. | )<br>)<br>) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Aerojet Rocketdyne, Inc.'s ("Aerojet") Motion to Transfer Venue (ECF No. 14) and Motion to Dismiss (ECF No. 6), after having been referred to the undersigned by United States District Judge M. Hannah Lauck. (ECF No. 20.) Aerojet argues that either the Central or Eastern District of California constitutes the most convenient forum for Plaintiff Robert Shenton's ("Plaintiff") age discrimination claim, because Plaintiff's chosen forum — the Richmond Division of the Eastern District of Virginia ("EDVA") — bears little connection to this case.

For the reasons set forth below, the Court recommends that Aerojet's Motion to Transfer (ECF No. 14) be GRANTED in part and DENIED in part, and that the District Court transfer this case to the Charlottesville Division of the Western District of Virginia ("WDVA"). Because the WDVA constitutes a more appropriate and convenient forum for this case, the Court further recommends that the district court there should rule on Aerojet's Motion to Dismiss.

## BACKGROUND

For over forty years, Plaintiff has worked for Aerojet, a California-based company headquartered in Sacramento, California. (Compl. (ECF No. 1) ¶¶ 3-8.) Plaintiff works

primarily out of Aerojet's office in Orange, Virginia, but travels frequently to California and other states for work. (Mem. in Supp. of Def.'s Mot. to Transfer Venue (ECF No. 15) ("Aerojet's Mem.") at 1, 13-14, 19, Ex. 1 (Decl. of Michael Bunter in Supp. of Mot. to Transfer Venue) (hereinafter, "Bunter Decl.") ¶ 18.) During his tenure with Aerojet, Plaintiff has served as Chief Operating Officer ("COO"), Vice President ("VP") of Sustainable Operations, VP of Operations and, currently, as VP of the Competitive Improvement Program Operations. (Compl. ¶¶ 9-10; Bunter Decl. ¶ 18.) Plaintiff, sixty-three years old at the time of the filing of the Complaint, alleges that Aerojet violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, by passing him over for promotions and demoting his responsibilities based on his age. (Compl. ¶¶ 1, 13, 28.) In support of his claim, Plaintiff points to instances where Aerojet executives inquired about Plaintiff's age and when he planned to retire, and used age as a metric to identify "high potential" employees. (Compl. ¶¶ 15-18, 22.) Plaintiff further alleges that a younger employee replaced him as VP of Operations in March 2015. (Compl. ¶ 28.) Plaintiff believes his new role constitutes a "demotion [in] status, stature, and responsibilities." (Compl. ¶ 28.)

On October 6, 2017, Aerojet filed its Motion to Transfer Venue, arguing that Plaintiff's claim lacks any connection to the Richmond Division of the EDVA. (Aerojet's Mem. at 1.) Specifically, Aerojet argues that transferring venue to California better serves the convenience of the parties and witnesses, as well as the interests of justice, because the majority of potential witnesses, including the Aerojet executives that allegedly discriminated against Plaintiff, reside in or near California. (Aerojet's Mem. at 6-20.) Plaintiff responds that Aerojet's "substantial business" ties to this forum render the Richmond Division of the EDVA an appropriate and

2

convenient venue to litigate this case. (Pl.'s Mem. in Resp. to Aerojet's Mot. to Transfer Venue (ECF No. 18) ("Pl.'s Resp.") at 5-15.)

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[a] district court may transfer a civil action 'to any other district or division where it might have been brought'" if the transferee district constitutes a more convenient venue for the parties and witnesses. *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 502 (E.D. Va. 2012) (quoting 28 U.S.C. § 1404(a)). This decision rests in the district court's sound discretion. *Id.* (citing *Inline Connection Corp. v. Verizon Internet Servs., Inc.*, 402 F. Supp. 2d 695, 699 (E.D. Va. 2005)).

Courts determining the appropriateness of transfer under § 1404(a) follow a two-step inquiry. *Id.* "First, the court must determine whether the claims could have been brought in the transferee forum. . . . Second, the court must consider three factors: (1) the plaintiff's choice of venue, (2) the convenience of the parties and witnesses, and (3) the interests of justice." *Id.* (citations omitted). A district court's decision to transfer to a more convenient forum depends on the particular facts of each case, because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor. *Samsung Elecs. Co., LTD. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005) (citations omitted) (hereinafter, "*Samsung*"). The party seeking transfer carries the burden of showing that the § 1404(a) factors warrant transfer to a more convenient venue. *Id.* at 715 (citing *Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 565 (E.D. Va. 2005)).

3

## ANALYSIS

### I.  Jurisdiction of Transferee Venue

The Court must initially determine whether Plaintiff could have originally brought this action in the transferee forum. Under 28 U.S.C. § 1391, a plaintiff can bring suit in any district where one defendant resides, if all defendants reside in the same state, or in the district where "a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(1)-(2). An entity defendant "resides," for venue purposes, in any judicial district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2).

Here, Plaintiff could have brought this case in either of Aerojet's preferred forums — the Central District of California or the Eastern District of California. Aerojet resides in Sacramento, California, its principal place of business; thus, California courts have personal jurisdiction over Aerojet. (Compl. ¶ 4; Aerojet's Mem. at 19); Cal. Civ. Proc. Code Ann. § 410.10 (West 2004); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Alternatively, Plaintiff could have filed this suit in the WDVA. Virginia courts have personal jurisdiction over Aerojet, because Aerojet "transact[ed] . . . business in the Commonwealth," as evidenced by the three offices it maintains in different parts of the state. (Bunter Decl. ¶ 22, Ex. 4 ("Sept. 2017 Aerojet Employee Map"); Va. Code § 8.01-328.1(A)(1). Because Plaintiff brings his claim under federal law, all three potential transferee forums and Plaintiff's chosen forum have subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Accordingly, Plaintiff could have brought his claim originally in the Central District of California, the Eastern District of California or the WDVA, as well as the EDVA.

4

## II. § 1404(a) Balancing Factors

Next, the Court must consider (1) the plaintiff's choice of venue, (2) the convenience of the parties and witnesses and (3) the interests of justice. *Jaffe*, 874 F. Supp. 2d at 502. The balance of these factors supports transferring venue to the WDVA for the following reasons.[1]

### a. *Plaintiff's Choice of Forum*

Courts do not afford substantial weight to a plaintiff's chosen forum "if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007); *see Advanced Mktg. Sys., LLC v. Delhaize Am., LLC*, 2015 WL 12806533, at *3 (E.D. Va. July 31, 2015) (following *Lycos*); *Samsung*, 386 F. Supp. 2d at 716 ("When the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight.") Rather, if little connection exists between the plaintiff's claim and his chosen forum, that "weigh[s] in favor of transfer to a venue with more substantial contacts." *Lycos*, 499 F. Supp. 2d at 692 (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003)).

Here, Plaintiff's choice of forum does not warrant substantial weight, because the EDVA bears only a tenuous connection to Plaintiff's claim. First, Plaintiff lives in Mineral, Virginia, which renders his home forum as the Charlottesville Division of the WDVA. (Pl.'s Resp. at 4, Ex. 1 (Decl. of Robert Shenton) (hereinafter, "Shenton Decl.") ¶ 2.) Second, since 2011, Plaintiff has worked primarily out of the Aerojet location in Orange, Virginia, also located in the WDVA. (Shenton Decl. ¶ 11.)

---

[1] Although neither party designated the WDVA as a preferred venue, courts may *sua sponte* order transfer under § 1404(a). *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 829 (E.D. Va. 2004).

To support his choice of forum, Plaintiff asserts that he has performed work for Aerojet in places "all around Virginia, including Orange County, Petersburg, Richmond, King George, Arlington, Gainesville, and Wallops Island in Accomack," but he provides no additional details about the nature of his work in Richmond. (Shenton Decl. ¶ 12.) Plaintiff notes that (1) Aerojet maintains its "main business office on the east coast" in Arlington, (2) Eileen Drake ("Drake"), the current CEO of Aerojet, has a permanent office in Arlington, and (3) the Arlington office sits closer to the Richmond Division of the EDVA than the Charlottesville Division of the WDVA. (Pl.'s Resp. at 5; Shenton Decl. ¶¶ 4-6.) Aerojet responds that its Arlington and Gainesville offices both stand in the Alexandria Division of the EDVA; and, only a five-mile difference exists between the distance from the Charlottesville Division to the Arlington office, as compared to the distance between the Richmond Division and the Arlington office. (Aerojet's Reply to Pl.'s Opp'n to Mot. to Transfer Venue (ECF No. 19) ("Aerojet's Reply") at 3 n.1, 4 n.2.)

Aerojet argues that, because Plaintiff's forum choice bears little connection to his claim, this factor weighs in favor of transfer to California. (Aerojet's Mem. at 8, 13 (noting that Plaintiff frequently traveled to California for work and executives based out of California performed the allegedly discriminatory and retaliatory acts described by Plaintiff in the Complaint).) The Court agrees that the lack of nexus between the Richmond Division of the EDVA and Plaintiff's claim favors transfer, but views the WDVA — Plaintiff's home forum and, arguably, the nucleus of operative facts relevant to Plaintiff's claim — as the most appropriate venue for this case. In addition to living and working in the WDVA, Plaintiff admitted that: (i) Aerojet's top executives travel regularly to the Orange location; (ii) Plaintiff has worked with key witnesses at the Orange location on "numerous" occasions; and, (iii)

6

"Aerojet has . . . held board of director meetings at the Orange location." (Shenton Decl. ¶ 15.) Accordingly, this factor favors transfer to the WDVA, which holds more ties to this case than Plaintiff's choice of forum.

   b. *Convenience to the Parties and Witnesses*

Courts in this District consider the "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process" when evaluating convenience to the parties. *Samsung*, 386 F. Supp. 2d at 717 n.13; *see Limelight Networks, Inc. v. XO Commc'ns, LLC*, 2016 WL 6871285, at *3 (E.D. Va. Aug. 3, 2016) (applying *Samsung* factors); *Lycos*, 499 F. Supp. 2d at 693 (same). In evaluating witness convenience, this District "draws a distinction between party-witnesses and non-party witnesses and affords greater weight to the convenience of non-party witnesses." *Lycos*, 499 F. Supp. 2d at 693 (citing *Samsung*, 386 F. Supp. 2d at 718.) The district court in *Lycos* explained:

> The party asserting witness inconvenience must proffer sufficient details regarding the witness and his or her testimony to allow the court to assess both the materiality of the evidence that the witness will offer and the inconvenience that will result from declining to transfer the action . . . . The witness convenience factor is less important when the appearance of the witnesses can be secured without the necessity of compulsory process . . . . On the other hand, greater weight is given to the potential inconvenience of witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue.

499 F. Supp. 2d at 693 (additional citations and quotation marks omitted). Here, Aerojet has identified eight potential witnesses, five of whom reside in California. (Aerojet's Mem. at 8-14.) The witnesses include Plaintiff and other current and former Aerojet employees. (Aerojet's Mem. at 8-14.)

Aerojet argues that convenience of the parties and witnesses weighs heavily in favor of transfer, because the majority of key party and non-party witnesses reside in California, or at least live closer to California than Virginia. (Aerojet's Mem. at 8-14.) Further, Aerojet's

7

California offices store the bulk of documents pertinent to Aerojet's employment decisions. (Aerojet's Mem. at 14-15.) Plaintiff responds that those considerations do not weigh in favor of transfer, because (1) Aerojet can compel its employees to testify in Virginia, (2) the testimony of former Aerojet employees beyond the Court's subpoena power "may be cumulative" and (3) the parties can easily exchange electronically stored documents. (Pl.'s Resp. at 9-14.)

i. *Ease of Access to Sources of Proof*

"The comparatively low cost of transporting documents can make their location a less pressing consideration when deciding a motion to transfer venue." *Finkel v. Subaru of Am., Inc.*, 2006 WL 2786811, at *3 (E.D. Va. Sept. 26, 2006). While technological advances and the ability to electronically store and transfer files have "lessened the importance of [courts'] proximity to physical documentation," courts do not totally disregard this factor. *NanoEntek, Inc. v. Bio-Rad Labs., Inc.*, 2011 WL 6023189, at *4 (E.D. Va. Dec. 2, 2011) ("[T]he court does not agree that simply because some of [defendant's] files are electronic that the location of *all* of the files becomes irrelevant.") (emphasis in original). Here, documents and witnesses constitute the primary sources of proof. Aerojet asserts that "there are no categories of documents — other than Plaintiff's own — located in Virginia, and even those documents would be located in the Western District of Virginia." (Aerojet's Mem. at 15.) Based on the low cost of document transportation and the ease of sharing files electronically, the fact that Aerojet stores the bulk of its documents in California weighs only slightly in favor of transfer to California. This factor likewise supports transfer to the WDVA, because the Aerojet office in Orange contains potentially pertinent documents related to Plaintiff's employment. (Aerojet's Mem. at 15.)

8

ii. *Convenience to Party Witnesses*

Party witnesses include current Aerojet employees Drake, Mark Tucker ("Tucker"), Michael Bunter ("Bunter") and Plaintiff.[2] (Aerojet's Mem. at 8-11, 13-14.) Three of the four party witnesses reside in California — Drake, Aerojet's CEO; Tucker, Aerojet's COO; and, Bunter, Aerojet's VP of Human Resources, Business Partners and Labor Relations. (Aerojet's Mem. at 8-11; Bunter Decl. ¶¶ 4-6.)

Beginning in March 2015, Plaintiff asserts that Aerojet "took action to reduce [his] leadership responsibilities within the company" and demoted him from his role as VP of Operations. (Compl. ¶ 28.) During that time, Aerojet reinstated the COO position in anticipation of the retirement of Scott Seymour ("Seymour"), former Aerojet CEO. (Aerojet's Mem. at 8, Bunter Decl. ¶ 15.) Drake filled the COO position until Aerojet formally promoted her to CEO in June 2015. (Bunter Decl. ¶¶ 15-16.) Drake then promoted Tucker to replace her as COO. (Bunter Decl. ¶ 16.) During this time, Bunter served as Senior Director of Human Resources. (Bunter Decl. ¶ 6.)

Aerojet deems Drake, Tucker and Bunter as key witnesses. Drake played an important role in promoting Tucker to COO. (Aerojet's Mem. at 9.) Plaintiff alleges that Aerojet passed him over for this role "without any notice or opportunity to compete for his former position." (Compl. ¶ 30.) Tucker completed Plaintiff's performance evaluations from 2013 through 2016 and had input in hiring Ron Felix ("Felix"), the younger employee that replaced Plaintiff as VP of Operations. (Compl. ¶ 28; Aerojet's Mem. at 9; Bunter Decl. ¶ 17.) According to Aerojet, Tucker will likely testify regarding Plaintiff's performance and the decision to replace him with

---

[2] Although Plaintiff brings this action against Aerojet only (not its individual officers), the Court groups Drake, Tucker and Bunter in the "party witness" category, because they serve as officers of Aerojet and would presumably speak on behalf of Aerojet at trial.

9

Felix. (Aerojet's Mem. at 9.) Finally, Bunter will "offer critical testimony on [Aerojet's] employment policies, Plaintiff's 'internal complaints,' any investigation and findings by the Human Resources department in response to those complaints, and [his] own communications with Plaintiff." (Aerojet's Mem. at 10 (citing Compl. ¶¶ 22-24).)

Both Drake and Tucker live in or near El Segundo, California, and work at Aerojet's parent company's El Segundo headquarters in the Central District of California. (Aerojet's Mem. at 8-9; Ex. 3 (Decl. of Christine Costantino in Supp. of Mot. to Transfer Venue) (hereinafter, "Costantino Decl.") ¶ 5.) Bunter resides in or near Sacramento, California, and works in Aerojet's Sacramento headquarters, located in the Eastern District of California. (Aerojet's Mem. at 8, 10; Bunter Decl. ¶¶ 2, 6.)

Although the Central or Eastern Districts of California would serve as more convenient forums for Aerojet's current employees, transfer to either venue in California would substantially inconvenience Plaintiff, who resides in Mineral, Virginia, and works at Aerojet's office in Orange, Virginia. (Aerojet's Mem. at 13; Costantino Decl. ¶ 3; Pl.'s Resp. at 4; Shenton Decl. ¶¶ 2, 11.) Aerojet argues that Plaintiff frequently travels to California for work; thus, traveling to California to litigate this case would not significantly inconvenience Plaintiff. (Aerojet's Mem. at 13.) Specifically, Plaintiff took twenty-nine trips to Sacramento and five trips to Los Angeles for work between December 2014 and August 2017. (Bunter Decl. ¶¶ 12-13, Ex. 1.) Further, Aerojet points out that Plaintiff presently makes over "$500,000 per year in cash compensation alone" as a current Aerojet executive. (Aerojet's Reply at 9; Decl. of Michael Bunter in Support of Reply to Pl.'s Opp'n to Mot. to Transfer Venue (hereinafter, "Suppl. Bunter Decl.") ¶ 4.) Regardless of Plaintiff's salary and frequent travel for work, Plaintiff's individual resources do

10

not compare to the resources available to Aerojet — "a large national company [doing] business throughout the United States." (Pl.'s Resp. at 4; Sept. 2017 Aerojet Employee Map.)

Plaintiff additionally argues that Aerojet can compel its current employees to testify in the EDVA, but provides no authority for this assertion. (Pl.'s Resp. at 9.) Rule 45(c) of the Federal Rules of Civil Procedure provides that —

> A subpoena may command a person to attend a trial . . . within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1)(B). Applying this Rule, federal courts in California could subpoena Drake, Tucker and Bunter (current Aerojet officers) to testify at trial, because they live and work in California. (Aerojet's Mem. at 8, 14.) If any of those three Aerojet officers regularly transacts business in person in Virginia, this Court could likewise subpoena them to testify. Plaintiff asserts that Aerojet's "President and CEO [Drake] typically travels to Aerojet's Arlington . . . location multiple times per month" and that Aerojet's top executives travel regularly to the Orange location. (Shenton Decl. ¶¶ 5, 15.) Aerojet responds that Drake took "only" sixteen trips to Washington, D.C. or Virginia over the course of thirty months, while Tucker has made six trips to the area since March 2015. (Aerojet's Reply at 6; Suppl. Bunter Decl. ¶¶ 2-3, Exs. 5, 6.) Neither party offers information on Bunter's travels. Based on the limited facts provided, Drake, Tucker and Bunter likely fall outside the reach of this Court's subpoena power.

However, the availability of compulsory process for Drake, Tucker and Bunter does not significantly tip the scales in favor of transfer to California, because Aerojet has not established its need for compulsory process to secure those witnesses' testimony. (Aerojet's Mem. at 14 (noting that "[i]t is premature at this point to ascertain the necessity of compulsory process");

11

*comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 688 (E.D. Va. 2013) ("[M]erely stating potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process.") (quoting *Samsung*, 386 F.Supp.2d at 719); *NanoEntek*, 2011 WL 6023189, at *6 (ability to use compulsory process "only slightly favor[ed] transfer," because party seeking transfer did not assert need for compulsory process).

Because "[t]ransfer is not appropriate merely to shift the hardships" from one party to the other, convenience to the party witnesses does not weigh in favor of transfer to California. *Wenzel v. Knight*, 2015 WL 222179, at *2 (E.D. Va. Jan. 14, 2015) (quoting *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998)). However, Plaintiff lives and works in the WDVA. (Shenton Decl. ¶¶ 2, 11.) Thus, transfer to the WDVA — the most appropriate venue in the Court's view — does not shift the hardships from Aerojet to Plaintiff. Rather, Plaintiff's home venue in the WDVA constitutes an equally (if not more) convenient venue to Plaintiff than the EDVA.

    iii. *Convenience to Non-party Witnesses*

Potential non-party witnesses include former Aerojet employees Seymour, Elizabeth Zacharias ("Zacharias"), Warren Boley ("Boley") and Felix. (Aerojet's Mem. at 9-13.)

Seymour served as CEO when Aerojet appointed Drake as COO in March 2015 — the same time that Aerojet allegedly reduced Plaintiff's leadership responsibilities. (Compl. ¶ 28; Bunter Decl. ¶ 15.) According to Aerojet, Seymour played a key role in appointing Drake as COO. (Aerojet's Mem. at 9-10; Bunter Decl. ¶ 15.) Since Seymour retired in June 2015, he moved to Newport, California — making him the only non-party witness subject to compulsory process in the Central District of California. (Aerojet's Mem. at 14; Bunter Decl. ¶ 10.) As

stated above, this factor does not weigh heavily in favor of transfer to California, because Aerojet has not established Seymour's unwillingness to travel to Virginia or the necessity of compulsory process. *NanoEntek*, 2011 WL 6023189, at *6.

Next, Zacharias, Bunter's predecessor, served as VP of Human Resources from July 2009 until September 2015. (Bunter Decl. ¶¶ 7, 14, Ex. 2 ("Aerojet Organizational Charts".) Zacharias worked out of Aerojet's Sacramento office. (Bunter Decl. ¶ 7.) In his Complaint, Plaintiff alleges that the VP of Human Resources told him that he ranked as one of the top three executives at Aerojet based on an outside consultant firm's April 2014 evaluation. (Compl. ¶ 34; Bunter Decl. ¶ 11.) Because Zacharias served as VP of Human Resources at that time, she will offer testimony on, *inter alia*, Aerojet's employment policies and her own communications with Plaintiff about the consultant firm's evaluation. (Aerojet's Mem. at 11.) Aerojet believes that Zacharias currently serves as the VP of Human Resources at Stanford University and resides in or near the San Francisco Bay Area. (Aerojet's Mem. at 12; Costantino Decl. ¶ 10, Ex. G.)

Third, Boley, former Aerojet President, allegedly made discriminatory marks to Plaintiff about his age and inquired about when Plaintiff planned to retire. (Compl. ¶¶ 18-19, 22; Bunter Decl. ¶¶ 9, 14; Aerojet Organizational Charts.) While serving as Aerojet President, Boley worked out of Aerojet's Sacramento headquarters, but he has since retired and relocated to Glatsonbury, Connecticut. (Bunter Decl. ¶ 9; Costantino Decl. ¶ 13.) Boley left Aerojet in February 2015 and did not participate in the COO selection process in March or June 2015; therefore, Aerojet does not consider Boley a "key witness." (Aerojet's Mem. at 12 n.5 (citing Compl. ¶ 30).)

Lastly, Felix, the younger, allegedly less qualified, individual who replaced Plaintiff as VP of Operations, currently resides in Reno, Nevada. (Compl. ¶ 28; Bunter Decl. ¶ 8; Aerojet

Organizational Charts.) Felix worked out of Aerojet's Sacramento Office until April 2017, after which he left Aerojet and relocated to Nevada. (Bunter Decl. ¶ 8.) Felix may provide testimony related to his selection as VP of Operations. (Aerojet's Mem. at 13.)

Based solely on proximity, California likely serves as the more convenient venue for the California and Nevada residents (Seymour, Zacharias and Felix), while Virginia constitutes the more convenient venue for Boley. Plaintiff argues that convenience to Seymour and Zacharias does not justify transfer to California, because their testimony "may be cumulative" of the testimony offered by their replacements, current Aerojet employees Drake and Bunter. (Pl.'s Resp. at 9.) The Court finds Plaintiff's argument unpersuasive. Seymour played a role in promoting Drake over Plaintiff to COO, and Zacharias allegedly spoke with Plaintiff directly about his rank as "one of the top three rated executives at Aerojet." (Compl. ¶¶ 28, 34; Bunter Decl. ¶ 15; Aerojet's Reply. at 7.) Lastly, consideration of the non-California residents, Boley and Felix, cuts neither in favor nor against transfer to California, because Boley lives closer to Virginia, Felix lives closer to California and neither resides within the subpoena power of the courts in Plaintiff's or Aerojet's preferred forums.

Convenience to the non-party witnesses leans marginally in favor of transfer to California, but, as stated above, transferring this case across the country would only shift the inconvenience to Plaintiff. Yet, no party or witness actually resides in Plaintiff's chosen forum — the EDVA. Aerojet maintains three offices in Virginia — none of which fall within the Richmond Division of the EDVA. (Aerojet's Reply at 4 n.2.) The lack of nexus between this case and the Richmond Division supports a transfer to Plaintiff's home forum, the WDVA. *See Jaffe*, 774 F. Supp. 2d at 505 ("Given that [plaintiff's] connection with the EDVA is tenuous and in reality amounts to little more than his desire to litigate here, the Court finds that the location of

[defendant's] witnesses, and the location from which [defendant's] documents can be easily accessed, weighs in favor of transfer.").

### c. Interests of Justice

The final factor, the interests of justice, "encompasses public interest factors aimed at 'systemic integrity and fairness.'" *Samsung*, 386 F. Supp. 2d at 721 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). Systemic integrity takes into account judicial economy and the avoidance of inconsistent judgments. *Id.* Fairness requires consideration of "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (citing *Samsung*, 836 F. Supp. 2d at 721 n.16).

No additional pending actions or related cases exist here, so the systemic integrity concerns about judicial economy and avoiding inconsistent judgments do not factor into the Court's analysis. With respect to fairness, this case involves only federal law (the ADEA); thus, no concerns arise as to knowledge of applicable law or avoiding unnecessary conflicts of law. Accordingly, the Court's analysis focuses on the remaining fairness factors — docket congestion, the interest in having local controversies decided at home and unfairness in burdening forum citizens with jury duty.

First, Aerojet argues that the Court should disregard docket congestion in its consideration of the interests of justice, because "Plaintiff's venue selection is nothing other than forum shopping for the 'rocket docket.'" (Aerojet's Mem. at 19.) Indeed, when other considerations weigh in favor of transferring venue, "the fact that plaintiff might obtain a trial and judgment in a shorter period would not [allow him] to avoid transfer." *Samsung*, 386 F.

Supp. 2d at 723; *see also Jaffe*, 874 F. Supp. 2d at 506 ("[I]f the EDVA's speed was afforded controlling weight in every venue transfer motion, cases better suited for resolution elsewhere would never make it out of the District."). Given the Richmond Division's thin connection to this case, the EDVA's expediency does not significantly weigh against transfer.

Second, the interest in having local controversies decided at home weighs in favor of transferring the case to the WDVA. Aerojet argues that this factor weighs in favor of transfer to California, which has a "strong local interest" in this case. (Aerojet's Mem. at 18; Aerojet's Reply at 1-2, 10.) Although Aerojet has a California market ten times the size of its Virginia market and substantially more employees in California, this particular controversy belongs to the WDVA — where Plaintiff lives and works. (Bunter Decl., Ex. 3; Aerojet's Reply at 1-2, 10.) Further, Aerojet employs 255 employees at its Orange location — the most out of any of Aerojet's Virginia locations. (Sept. 2017 Aerojet Employee Map.)

Lastly, the Court finds that the unfairness of burdening Richmond jurors with a case that has little, if any, connection to this Division, weighs in favor of transfer to the WDVA. Between Aerojet's Alexandria and Gainesville offices, Aerojet employs approximately 150 employees in the EDVA, but neither of those offices fall within the Richmond Division. (Sept. 2017 Aerojet Employee Map.) Accordingly, the interests of justice call for transferring venue to the WDVA.

## CONCLUSION

For the reasons stated above, the Court recommends that Aerojet's Motion to Transfer Venue (ECF No. 14) be GRANTED in part and DENIED in part, and that the District Court transfer this case to the Charlottesville Division of the WDVA. The Court further recommends that the district court in the Charlottesville Division of the WDVA — the more appropriate and convenient forum for this case — rule on Aerojet's Motion to Dismiss (ECF No. 6).

Let the clerk forward a copy of this Report and Recommendation to all counsel of record and to United States District Judge M. Hannah Lauck.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: May 21, 2018